# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Troy K. Scheffler,
On behalf of himself
and all similarly situated persons,

              Plaintiff,

v.                                 **CIVIL COMPLAINT**
                                       **JURY TRIAL DEMANDED**

Omni Credit Services of Florida, Inc.,
              Defendant.            Case No.

# **COMPLAINT**

A.    JURISDICTION

1. Plaintiff Troy K Scheffler is domiciled at 965 104th Ave. NW, Coon Rapids, Minnesota 55433.

2. Defendant is a United States Citizen in regards to this lawsuit, with its principal place of business in Florida, with agent for service of process in Minnesota located in Burnsville, Dakota County, Minnesota.

3. This claim is brought to this court without regard to the amount in controversy under 15 U.S.C. § 1692k(d).

B.    FACTS AND CAUSE OF ACTION

4. This suit is caused by numerous violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. and Minnesota Statutes § 332.37 regarding prohibited practices of debt collectors.

1

**Whereas:**

5. Beginning on 12-29-08 Defendant through its employee who only identified themselves as "Jeff" did leave Plaintiff a voicemail at Plaintiff's home.

6. Said voicemail was the initial contact from Defendant to Plaintiff.

7. This voicemail has been deemed by the courts as a "contact" and fails to meet disclosure requirements required of 15 USC § 1692e(11) clearly established by the court in *Foti v. NCO Financial Systems, Inc.*, 424 F. Supp.2d 643 (S.D.N.Y. 2006).

8. With said contact Defendant also fails to meet MN Stat. §332.37(16) disclosing to Plaintiff its full name as it appears on its Minnesota debt collector's license; *Omni Credit Services of Florida, Inc.;* MN License #20365210.

9. Defendant also fails meaningful disclosure of their identity required of 15 USC § 1692d(6).

10. That on 12-30-08 Defendant through its employee "Jeff" did contact Plaintiff via telephone.

11. During said conversation Jeff threatened Plaintiff, "I'm going to run your social security number and find out where you work"; violating 15 USC § 1692e(4).

12. "Jeff" then terminated the call without notice by hanging up on Plaintiff without allowing Plaintiff to give a response; violating 15 USC § 1692d(5).

13. Jeff also failed to meet disclosure requirements of both 15 USC § 1692e(11) and Minn. Stat. §332.37(16).

14. Plaintiff did then immediately call Jeff back to reiterate Jeff's threats.

15. Jeff did then again threaten Plaintiff of "wage garnishment" and that Defendant would be contacting Plaintiff's place of employment; again violating 15 USC § 1692e(4).

16. Jeff again hung up on Plaintiff.

17. Jeff failed to meet disclosure requirements of both 15 USC § 1692e(11) and Minn. Stat. §332.37(16).

18. That on 01-03-09 Defendant through an automated dialer system did leave Plaintiff a voicemail which failed to meet disclosure requirements of 15 USC § 1692e(11), 15 USC § 1692d(6) and MN Stat. §332.37(16).

19. Furthermore Defendant's automated dialer system fails to meet requirements of Minn. Stat. §332.37(13) by communicating without their message being immediately preceded by a live operator.

20. That on 01-05-09 Defendant through an automated dialer system did leave Plaintiff a voicemail which failed to meet requirements of 15 USC § 1692e(11), 15 USC § 1692d(6), and Minn. Stat. §§ 332.37(16) and 332.37(13).

21. That on 01-06-09 Defendant through an automated dialer system did leave Plaintiff a voicemail which failed to meet requirements of 15 USC § 1692e(11), 15 USC § 1692d(6), and Minn. Stat. §§ 332.37(16) and 332.37(13).

22. That on 01-09-09 Defendant through an automated dialer system did leave Plaintiff a voicemail which failed to meet requirements of 15 USC § 1692e(11), 15 USC § 1692d(6), and Minn. Stat. §§ 332.37(16) and §332.37(13).

23. That on 01-10-09 Defendant through an automated dialer system did leave Plaintiff a voicemail which failed to meet requirements of 15 USC § 1692e(11), 15 USC § 1692d(6), and Minn. Stat. §§ 332.37(16) and §332.37(13).

24. That on 01-14-09 Plaintiff did return a message left by Defendant.

25. Plaintiff spoke with an employee named "Scott" who after a short conversation hung up on Plaintiff.

26. Defendant's means of terminating calls violates 15 USC § 1692d(5).

27. During said conversation Scott failed to meet disclosures of 15 USC § 1692e(11), 15 USC § 1692d(6), and Minn. Stat. §332.37(16).

28. Plaintiff immediately called back Defendant.

29. Plaintiff inquired to the attendant why Defendant would continue to call if they continually just hang up on Plaintiff, insinuating Defendant was violating 15 USC § 1692d(5).

30. Defendant then transferred Plaintiff back to "Scott".

31. Scott then threatened that ultimately Plaintiff would have a judgment placed against him and that his wages would be garnished, violating 15 USC § 1692e(4).

32. Scott claimed that Plaintiff was watching "Jerry Springer" while he was working and hung up on Plaintiff; violating 15 USC § 1692d(2).

33. During said conversations Defendant at no time met disclosure requirements of both 15 USC § 1692e(11) and Minn. Stat. §332.37(16).

34. That on 01-15-09 Defendant through an automated dialer system did leave Plaintiff a voicemail which failed to meet requirements of 15 USC § 1692e(11), 15 USC § 1692d(6), and Minn. Stat. §§ 332.37(16) and §332.37(13).

35. That on 01-16-09 Defendant through an automated dialer system did leave Plaintiff a voicemail which failed to meet requirements of 15 USC § 1692e(11), 15 USC § 1692d(6), and Minn. Stat. §§ 332.37(16) and §332.37(13).

36. That on 01-21-09 Defendant through an automated dialer system did leave Plaintiff a voicemail which failed to meet requirements of 15 USC § 1692e(11), 15 USC § 1692d(6), and Minn. Stat. §§ 332.37(16) and §332.37(13).

37. Plaintiff later returned said message of Defendant and spoke with a "Mr. Hanson".

38. Hanson insulted Plaintiff by stating that Plaintiff was "childish, immature, and irresponsible"; violating 15 USC § 1692d(2).

39. Hanson then ridiculed Plaintiff of a speech impediment stating "Don't you know how to speak?

40. Hanson continued by saying, "Did you go to speech classes when you were little?" violating 15 USC § 1692d(2).

41. Hanson then hung up on Plaintiff.

42. Defendant's means of terminating calls violates 15 USC § 1692d(5).

43. Defendant failed to meet disclosure requirements of both 15 USC § 1692e(11) and Minn. Stat. §332.37(16).

44. Plaintiff immediately called Defendant back.

45. Defendant transferred Plaintiff to Hanson.

46. After a brief conversation in which Plaintiff turned down a demand for $500, Hanson immediately hung up on Plaintiff.

47. Defendant failed to meet disclosure requirements of both 15 USC § 1692e(11) and Minn. Stat. §332.37(16).

48. Plaintiff immediately called Defendant back and asked the attendant for someone other than Hanson to speak to.

49. Defendant was transferred to a "Ty Walker".

50. During said conversation Walker claimed to "work for an attorney's office and we do garnishments"; violating 15 USC § 1692e.

51. Plaintiff asked if Walker was a supervisor and complained about harassing phone calls in which Plaintiff is always hung up on.

52. Walker stated that he knew who Hanson was and that he was a "buster (slang derogatory term)".

53. Defendant failed to meet disclosure requirements of both 15 USC § 1692e(11) and Minn. Stat. §332.37(16).

54. That on 02-03-09 Hanson did contact Plaintiff.

55. During said conversation Hanson accused Plaintiff of not being a "responsible adult"; violating 15 USC § 1692d(2).

56. Hanson claimed to be the manager.

57. Hanson ended the communication by hanging up on Plaintiff stating that he would be calling back tomorrow.

58. Defendant's means of terminating calls violates 15 USC § 1692d(5).

59. Defendant failed to meet disclosure requirements of both 15 USC § 1692e(11) and Minn. Stat. §332.37(16).

60. That on 02-06-09 Defendant through an automated dialer system did leave Plaintiff a voicemail which failed to meet requirements of 15 USC § 1692e(11), 15 USC § 1692d(6), and Minn. Stat. §§ 332.37(16) and §332.37(13).

61. That on 02-07-09 Defendant through an automated dialer system did leave Plaintiff a voicemail which failed to meet requirements of 15 USC § 1692e(11), 15 USC § 1692d(6), and Minn. Stat. §§ 332.37(16) and §332.37(13).

62. That on 02-09-09 Defendant through an automated dialer system did leave Plaintiff a voicemail which failed to meet requirements of 15 USC § 1692e(11), 15 USC § 1692d(6), and Minn. Stat. §§ 332.37(16) and §332.37(13).

63. That on 02-10-09 Defendant did contact Plaintiff directly via a recorded dialer message; violating 15 USC § 1692e(11), 15 USC § 1692d(6), and Minn. Stat. §§ 332.37(16) and 332.37(13).

64. Plaintiff immediately returned the automated message and spoke with a "Mr. Moran".

65. Moran threatened that after Plaintiff's alleged account left Defendant's office that it would be transferred to an attorney's office, violating 15 USC § 1692e(5).

66. Moran continue to threaten Plaintiff that he should "sit back and you wait for the knock on the door from that process server looking for you to serve you with a summons and complaint to go to court and pray to God you're not working because once they get a judgment pal, they're going after your paycheck", violating 15 USC § 1692e(4).

67. Moran then insulted Plaintiff by stating "The big difference between us is that I pay my bills… boy".

68. Moran emphasized when he stated "boy" as if attempting to use it in the racially derogatory use against an African American, violating 15 USC § 1692d(2).

69. Moran then hung up on Plaintiff.

70. Defendant's means of terminating calls violates 15 USC § 1692d(5).

71. Defendant failed to meet disclosure requirements of both 15 USC § 1692e(11) and Minn. Stat. §332.37(16).

72. That on 02-11-09 Defendant did contact Plaintiff directly via a recorded dialer message; violating 15 USC § 1692e(11), 15 USC § 1692d(6), and Minn. Stat. §§ 332.37(16) and 332.37(13).

73. Plaintiff immediately returned the automated message and was connected with an unidentified female.

74. Said female refused to disclose Mr. Moran's first name, after Plaintiff directly inquired, claiming it was "unimportant".

75. Said female threatened that Plaintiff would be receiving phone calls from Defendant "Forever", violating 15 USC § 1692e(5).

76. She continued to threaten that her boss was an attorney, "So as far as that is concerned things could speed up a lot quicker", violating 15 USC § 1692e.

77. She then stated that they were going to find Plaintiff's assets through an "asset investigation", violating 15 USC § 1692e(4).

7

78. Said female continued her threats by stating that when a judgment was obtained they could put a lien against Plaintiff's home, violating 15 USC § 1692e(4).

79. Said female verified that Hanson was the manager, but refused to disclose who the attorney she kept referencing that was in her office was.

80. Said female stated Defendant would continue to call Plaintiff until he "filed bankruptcy", violating15 USC § 1692e(5); 1692d(2).

81. The unidentified female then hung up on Plaintiff after a short argument as to the liability of the Plaintiff to the alleged bill she was calling about.

82. Defendant's means of terminating calls violates 15 USC § 1692d(5).

83. Defendant failed to meet disclosure requirements of both 15 USC § 1692e(11) and Minn. Stat. §332.37(16).

84. After the verification that Hanson was the manager, Plaintiff immediately called back to stop the harassing calls.

85. Plaintiff was notified that Hanson was not available and was transferred again to previous unidentified female.

86. Plaintiff was then transferred to who she claimed to be the other manager, "Ricardo".

87. Plaintiff then inquired to Ricardo as to when Defendant was going to cease their harassing calls in which Defendant continually hang up on Plaintiff when they don't hear what they want.

88. Ricardo said that there was a possibility that Defendant would file suit against Plaintiff, violating 15 USC § 1692e(4).

89. Ricardo stated that the earlier "Jeff" was actually "Mr. Hanson".

90. Defendant failed to meet disclosure requirements of both 15 USC § 1692e(11) and Minn. Stat. §332.37(16).

91. That on 02-12-09 Defendant through an automated dialer system did leave Plaintiff a voicemail which failed to meet requirements of 15 USC § 1692e(11), 15 USC § 1692d(6), and Minn. Stat. §§ 332.37(16) and 332.37(13).

92. That on 02-14-09 Defendant did contact Plaintiff directly via a recorded dialer message; violating 15 USC § 1692e(11), 15 USC § 1692d(6), and Minn. Stat. §§332.37(16) and 332.37(13).

93. Plaintiff immediately returned the automated message and was transferred to Mr. Hanson.

94. After a brief conversation in which Plaintiff stated he did not have any money, Hanson stated that he would continue to call and hung up on Plaintiff.

95. Defendant's means of terminating calls violates 15 USC § 1692d(5).

96. Defendant failed to meet disclosure requirements of both 15 USC § 1692e(11) and Minn. Stat. §332.37(16).

97. Plaintiff immediately called back and asked for a supervisor.

98. Plaintiff was transferred to Hanson.

99. Plaintiff inquired as to why Hanson continually calls and hangs up.

100. Hanson said "because we're done talking", then hung up.

101. Defendant failed to meet disclosure requirements of both 15 USC § 1692e(11) and Minn. Stat. §332.37(16).

102. That on 02-17-09 Defendant via Hanson telephoned Plaintiff and after a short conversation in which Plaintiff again told Hanson that he didn't have any money, Hanson stated he would call back tomorrow and hung up on Plaintiff.

103. Defendant's means of terminating calls violates 15 USC § 1692d(5).

104. Defendant failed to meet disclosure requirements of both 15 USC § 1692e(11) and Minn. Stat. §332.37(16).

105. That on 02-18-09 Jeff left Plaintiff a voicemail which failed to meet disclosure requirements of 15 USC § 1692e(11), 15 USC § 1692d(6), and Minn. Stat. §332.37(16).

106. That on 02-19-09 Defendant did contact Plaintiff directly via a recorded dialer message; violating 15 USC § 1692e(11), 15 USC § 1692d(6), and MN Stat. §§ 332.37(16) and 332.37(13).

107. That on 02-20-09 Defendant via Hanson telephoned Plaintiff and after a short conversation Hanson stated he would call every day and then stated he would call back tomorrow at 8am and hung up on Plaintiff.

108. These statements violate 15 USC § 1692e(5).

109. Furthermore, Hanson clearly expresses that his communications are intended to violate 15 USC § 1692d(5).

110. Defendant failed to meet disclosure requirements of both 15 USC § 1692e(11) and Minn. Stat. §332.37(16).

111. That on 02-21-09 Defendant via "Mr. Owens" telephoned Plaintiff.

112. During said conversation Owens stated that Plaintiff's account was going to go to Defendant's "legal department" on the 26th.

113. Owens continued to state that when that happens that the Defendant will contact Plaintiff's employer and garnish his wages.

114. Owens then stated that Plaintiff's bill will then double plus legal and court fees when a judgment is placed against Plaintiff also in which interest accrues "forever".

115. Owens continued to state that the next phone call would be from their attorney's and that Plaintiff would receive a letter from said attorney's stating how much they intend on taking out of Plaintiff's wages.

116. These statements were numerous violations of 15 USC §§ 1692e(4) and 1692e(5).

117. Owens then said that he was going to "let them do what they need to do" and then hung up on Plaintiff.

118. Defendant's means of terminating calls violates 15 USC § 1692d(5).

119. Defendant failed to meet disclosure requirements of both 15 USC § 1692e(11) and Minn. Stat. §332.37(16).

120. That on 02-23-09 Defendant through an automated dialer system did leave Plaintiff a voicemail which failed to meet requirements of 15 USC § 1692e(11), 15 USC § 1692d(6), and Minn. Stat. §§ 332.37(16) and 332.37(13).

121. That on 02-24-09 Mr. Hanson left Plaintiff a voicemail which failed to meet disclosure requirements of 15 USC § 1692e(11), 15 USC § 1692d(6), and Minn. Stat. §332.37(16).

122. That on 02-25-09 Defendant via Hanson did contact Plaintiff.

123. After a short conversation, Hanson stated that he would call tomorrow and hung up on Plaintiff.

124. Defendant's means of terminating calls violates 15 USC § 1692d(5).

125. Defendant failed to meet disclosure requirements of both 15 USC § 1692e(11) and Minn. Stat. §332.37(16).

126. That on 02-26-09 Defendant through an automated dialer system did leave Plaintiff a voicemail which failed to meet requirements of 15 USC § 1692e(11), 15 USC § 1692d(6), and Minn. Stat. §§ 332.37(16) and 332.37(13).

127. That on 02-27-09 Defendant via "Adam" did contact Plaintiff.

128. Defendant failed to meet disclosure requirements of both 15 USC § 1692e(11) and Minn. Stat. §332.37(16).

## C. DAMAGES

129. Clearly this whole ordeal has been traumatic in the sense that Plaintiff was illegally deceived, threatened, and harassed by Defendant.

130. Defendant also made it quite clear that it is willing to use employees claiming to be or are "managers" to promote their unfair practices instead of conscionably using these positions to stop further liability from intentional and malicious actions and to possibly mitigate damages already suffered by Plaintiff.

131. The Defendant clearly and flagrantly refused to amend their ways showing a complete disrespect to the Plaintiff and the laws encompassing their collection practices.

132. This all has led plaintiff to a general distrust of debt collectors and has quite frankly disheartened him as to field which he believed served a legitimate purpose.

133. The many actions of the few individual agents of the defendant have lowered the esteem plaintiff held for bill collectors.

134. Plaintiff is now suspect and fearful any time his phone rings with an unidentified or unfamiliar number.

135. Due to the actions by Defendant, Plaintiff's anxiety was severely exacerbated and is now suffering chronic anxiety and panic attacks daily.

136. The anxiety he now suffers from makes it difficult to leave his house for extended periods of time making an 8 hour shift difficult or impossible for him.

137. Plaintiff feels like he has lost control of his own person and now needs to take prescribed drugs (Xanax) and attend counseling to have any hope of feeling normal again on account of the defendant's misconduct.

138. Wherefore, due to the intentional, deceptive, and malicious conduct of Defendant, the medical condition Plaintiff has now fully developed and documented, present and future lost wages, Plaintiff now brings this action.

139. Plaintiff reserves the right as a Pro-Se Plaintiff that this complaint contains facts and is not intended to limit claims of violations and the authorities stated are for reference of a claim in general.

140. Defendant's conduct has caused Plaintiff emotional distress, anxiety and extreme

frustration over being repeatedly harassed by Defendant.

**CLASS ALLEGATIONS**

141. Plaintiff brings this action individually, and as a class action on behalf of all Minnesota consumers from whom Defendant attempted to collect consumer debts using the same or similar form collection telephone messages left for Plaintiff.

142. Such class can be defined as all Minnesota consumers, as the term "consumer" is defined by 15 U.S.C. § 1692a(3), who received pre-recorded messages from the defendant, within one year prior to 29 December 2009, in which the defendant included nothing more than a name, a telephone number, and a reference to some important matter.

143. Defendant regularly engages in debt collection using the same or similar form collection telephone messages it left for the Plaintiff in its attempts to collect from other consumers.

144. The Class is so numerous that joinder of all members is impracticable.

145. Although the precise number of Class members is known only to Defendant, Plaintiff avers upon information and belief and reasonable inquiry into objective facts that Defendant has left hundreds if not thousands of collection messages similar to those left for Plaintiff.

146. Accordingly, Plaintiff estimates that the class size numbers in the hundreds, if not thousands.

147. Plaintiff's claims are typical of the claims of the Class.

148. Common questions of law or fact raised by this class action complaint affect all members of the Class and predominate over any individual issues.

149. Common declaratory, equitable, and statutory relief is therefore sought on behalf of all members of the Class.

150. A class action is superior to other available methods for the fair and efficient

adjudication of this controversy.

151. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to the individual members of the Class.

152. A risk that any adjudications with respect to individual members of the Class would, as a practical matter, either be dispositive of the interests of other members of the Class not a party to the adjudication, or substantially impair or impede their ability to protect their interests.

153. Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

154. A class action is a superior method for the fair and efficient adjudication of this controversy.

155. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is slight because the maximum statutory damages are limited to $1,000.00 under the FDCPA.

156. Management of the Class claims is likely to present significantly fewer difficulties than those presented in many individual claims.

157. The identities of the Class members may be obtained from Defendant's records.

158. Plaintiff will fairly and adequately protect and represent the interests of the Class.

159. The management of the class action proposed is not extraordinarily difficult, and the factual and legal issues raised by this class action complaint will not require extended contact with the members of the Class because Defendant's conduct was perpetrated on all members of the Class, and will be established by common proof.

160. Moreover, Plaintiff has retained counsel with experience in consumer law actions and, if necessary, capable of association with more experienced counsel well versed in actions involving class actions and consumer protection laws, including the FDCPA.

## TRIAL BY JURY

161. Plaintiff is entitled to and hereby demands a trial by jury. US Const. amend. 7. Fed. R. Civ. Pro. 38.

## CAUSES OF ACTION

### COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT - 15 U.S.C. §1692 et seq

162. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

163. The foregoing acts and omissions of Defendant constitutes numerous and multiple violations of the FDCPA, including but not limited to each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq.

164. As a result of Defendant's violations of the FDCPA, Plaintiff has suffered and is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1), statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A), and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from Defendant.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that relief be granted as follows:

• That an order be entered certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the Class;

• That an order be entered declaring that Defendant's actions as described above are in violation of the FDCPA, specifically and without limitation, 15 USC §§ 1692e(11) and 1692d(6), and Minn. Stat. § 332.37(16 and 23);

- That judgment be entered against Defendant for actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

- That judgment be entered against Defendant for statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A) and (B);

- That the Court award costs and reasonable attorneys' fees, pursuant to 15 U.S.C. § 1692k(a)(3); and

- That the Court grant such other and further relief as may be just and proper.

D.     REQUEST FOR RELIEF

1. **Wherefore**, Plaintiff requests he be allowed to commence this action without prepayment of fees and costs, or security therefore, pursuant to 28 U.S.C. § 1915.

2. The attached affidavit of indigency has been completed and is submitted in support of this request for leave to proceed in forma pauperis.

3. Plaintiff prays the court order the defendant to pay plaintiff damages in the amount of $80,000.

4. Plaintiff prays the court award Plaintiff attorney fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

5. Plaintiff prays the court award Plaintiff for reasonable and customary costs, expenses, and interest in pursuit of this action.

6. Plaintiff prays the court order Defendant to implement new policies concerning debt collection practices and complaint procedures.

7. Any other relief deemed just and proper.

E.     JURY TRIAL DEMAND

Plaintiff hereby requests a trial by jury on all claims so triable.

Dated this 29th day of December, 2009,

_____
Troy K Scheffler
965 104th Ave NW
Coon Rapids, MN 55433
763-225-7702